**UNITED STATES of America, Plaintiff-Appellee,**

v.

**COASTAL STATES CRUDE GATHERING COMPANY, Defendant-Appellant.**

**No. 80–1533.**

United States Court of Appeals,
Fifth Circuit.
Unit A

April 27, 1981.

Rehearing and Rehearing En Banc Denied May 21, 1981.

David S. Gamble, Houston, Tex., for defendant-appellant.

J. A. Canales, U.S. Atty., Houston, Tex., James W. Moorman, Asst. Atty. Gen., Anne S. Almy, Martin W. Matzen, Attys., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges:

POLITZ, Circuit Judge:

Coastal States Crude Gathering Company (Coastal) appeals a summary judgment in favor of the United States enforcing a "civil" penalty in the amount of $5,000 against Coastal pursuant to 33 U.S.C. § 1321(b)(6). We amend the judgment to provide for a penalty of $1,000 and, as amended, affirm.

Finding no genuine issue of material fact, the district court summarized the facts as follows:

Both parties agree that there is no genuine issue as to any material fact in this case. On or about June 7, 1977, approximately 5,200 barrels of gasoline were discharged into Nueces Bay, near Corpus Christi, Texas, from a product pipeline known as the Houston 12-inch pipeline owned and operated by the Defendant. The gasoline escaped from the pipeline through a small "hairline" fracture at a point well outside the navigational channel in Nueces Bay. At the point of the fracture in the pipeline, Nueces Bay was at least four feet deep, and the pipeline was buried at a depth of at least three feet below the bottom of the Bay. The pipeline in question had been installed by the Defendant in accordance with all applicable governmental regulations and standard industry practice.

It seems that the discharge resulted solely from the acts of an unknown third

party. Inspection of the pipeline, conducted immediately after the discharge was discovered, revealed that the leak was caused when the pipe was struck by a vessel owned by an unknown third party traveling well outside the navigation channel in Nueces Bay. The vessel struck the pipeline with enough force to penetrate the two inches of concrete in which the pipeline had been encased and to dent and gouge the body of the pipe.

In brief and in oral argument counsel for Coastal forcefully contends that the imposition of a monetary penalty on Coastal for a discharge resulting solely from the acts of an unknown third person violates the Fifth Amendment proscription against the taking of property without due process of law. The district court rejected this contention, upheld the constitutionality of the statute, granted summary judgment to the United States and ordered Coastal to pay a civil penalty of $5,000. We likewise find that the statute is constitutional, both on its face and as applied.

Congress enacted the Federal Water Pollution Control Act Amendments of 1972 (FWPCA) making the following unequivocal declaration of policy in 33 U.S.C. § 1321(b)(1):

> The Congress hereby declares that it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . .

Section 1321(b)(3) prohibits the "discharge of oil or hazardous substances (i) into or upon the navigable waters of the United States . . . in such quantities as may be harmful." Congress prescribed various remedies and penalties, including the civil penalty established by § 1321(b)(6). Under this section, after notice and an opportunity for a hearing, the Secretary of the department in which the Coast Guard is operating shall assess a civil penalty of up to $5,000 for each violation of § 1321(b)(3) by any owner, operator, or person in charge of an onshore facility, offshore facility or vessel from which oil or a hazardous substance has been discharged. In determining the amount of the civil penalty the section directs the Secretary to consider three factors: "the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation."

Section 1321(b)(6) provides no defense to the assessment of the civil penalty; indeed, it establishes an absolute liability standard which obviates the need for a finding of fault. By way of contrast, one of the other remedies contained in the Act, liability for clean-up costs, does provide certain defenses. Under § 1321(f) the owner or operator of a facility or vessel from which there has been a discharge may defend against a claim that it is liable for clean-up costs by showing that the discharge was caused solely by an act of God, an act of war, negligence on the part of the United States Government, or an act or omission of a third party.

The district court properly held that this statutory scheme, as applied to impose a civil penalty upon the owner of a discharging facility regardless of fault, is not violative of the Fifth Amendment due process clause. To evaluate properly the legislation we must look to the whole of the statutory scheme. The proceeds resulting from the imposition of civil penalties, as noted by our colleagues in the Seventh Circuit:

> are to be deposited in a revolving fund which is to be used to finance a National Contingency Plan for the containment, dispersal, and removal of spills; the clean-up of maritime disaster discharges; the reimbursement of clean-up costs incurred by owners or operators who are able to establish one of the four defenses; and the administration of the act.

*United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1309 (7th Cir. 1978). *See* 33 U.S.C. § 1321(c), (d), (i), (k), and (*l*).

In order to satisfy due process requirements, the legislative means must bear "a reasonable relation to a proper legisla-

tive purpose" and be "neither arbitrary nor discriminatory." *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). The statutory provision under challenge here satisfies these criteria. We concur with the Seventh Circuit's conclusion expressed in *Marathon Pipe*, 589 F.2d at 1309:

> The purpose of the FWPCA and of section 1321 is to achieve the result of clean water as well as to deter conduct causing spills. The civil penalty serves the Act's goal of pollution-free water by providing a means of funding the administration and enforcement of the Act.

The intendment of the statute is clear: Congress places a major part of the financial burden for achieving and maintaining clean water upon those who would profit by the use of our navigable waters and adjacent areas, and who pollute same. We find this shifting of the burden from the public to the offending users—albeit good faith, non-negligent users—to be a valid exercise of congressional powers. The imposition of a civil monetary penalty, on a strict liability basis, is reasonably related to the purposes of the statutory scheme and is not unconstitutional.

The Secretary assessed a fine of $1,000 after obviously weighing and considering the three statutory criteria. We are persuaded that the third factor, the gravity of the violation, was given substantial consideration as indeed it should have been. Coastal built and maintained its pipeline in accordance with all prevailing governmental rules and regulations and industry practices; it bore no fault in the rupture and discharge and immediately corrected the leak and pursued available measures to clean up the affected area. The Secretary was quite apparently impressed by this and set the penalty at twenty percent of the maximum allowed. We consider this assessment fair and just. In the complaint filed by the government, the penalty prayed for was the maximum available under § 1321(b)(6). We think the prayer and judgment for $5,000 was the result of inadvertence. Regardless, under the circumstances reflected in this record we believe the civil penalty of $5,000 is inappropriate and find appropriate the $1,000 as originally assessed by the Secretary. The judgment will be modified to assess a penalty of $1,000.

The judgment of the district court is AMENDED and, as amended, AFFIRMED.