**UNITED STATES of America and State of Louisiana**

v.

**CITGO PETROLEUM CORPORATION.**

**No. 2:08–CV–0893.**

United States District Court, W.D. Louisiana, Lafayette Division.

March 4, 2010.

Jason T. Barbeau, U.S. Dept of Justice Envir Enforcement Sec., Washington, DC, Karen J. King, U.S. Attorneys Office, Lafayette, LA, Ann Beryl Hill, LA Dept. of Environmental Quality, Dwana C. King, Baton Rouge, LA, for United States of America and State of Louisiana.

Richard E. Sarver, Craig Isenberg, Jonathan R. Bourg, Meredith A. Cunningham, Barrasso Usdin et. al., New Orleans, LA, Brian Cody Boyle, Edward C. Lewis, Fulbright & Jaworski, Houston, TX, Michael Kevin Powell, Barrasso Usdin et. al., Lake Charles, LA, for CITGO Petroleum Corporation.

### JUDGMENT

RICHARD T. HAIK, SR., District Judge.

Considering the Plaintiffs' Motion for Partial Summary Judgment [Doc. # 25],

IT IS ORDERED, ADJUDGED, AND DECREED that the Motion for Partial Summary Judgment is hereby GRANTED.

### REASONS FOR JUDGMENT

Before the Court is a Motion for Partial Summary Judgment [Doc. # 25] filed by the United States of America and the State of Louisiana. For the reasons that follow, the motion is **GRANTED.**

### A. Facts

It is undisputed by the parties[1] that CITGO is a corporation that owned and operated the CITGO Lake Charles Refinery on June 19 and 20, 2006, and continues to be the owner and operator. Tanks 320 and 330 are containers that are part of the CITGO Lake Charles Refinery. The tanks and the refinery are facilities located on land within the United States. Tanks 320 and 330 contained waste or "slop" oil, refinery process wastewater, and sludge on June, 19, 2006. A heavy rain storm was forecasted for, and did occur in, the Lake Charles area on June 19, 2006. Tanks 320 and 330 overflowed on that date, spilling oil into the Indian Marais and the Calcasieu River.

The Calcasieu River supports ship traffic to and from the Port of Lake Charles. The United States Coast Guard has officially designated the Calcasieu River up to the Port of Lake Charles as a "regulated navigation area." 33 C.F.R. § 165.807 (listing Calcasieu River as "regulated navigation area"). The United States Army Corps of Engineers maintains a navigation channel on the Calcasieu River from Lake Charles Harbor to the Gulf of Mexico. The Indian Marais flows through a wetland adjacent to the Calcasieu River. The Indian Marais flows into the Calcasieu River and is subject to the ebb and flow of the tide.

CITGO's oil spill resulted in the presence of oil and oil sheen in the Indian Marais and the Calcasieu River. CITGO observed the oil sheen on the Indian Marais at approximately 8:00 a.m. on June 19, 2006. CITGO's discharge of oil on June 19 and 20, 2006, was not authorized by a permit. On September 17, 2008, CITGO pleaded guilty to one count of negligent discharge of a pollutant in violation of Sections 301(a) and 309(c)(1)(A) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1319(c)(1)(A). CITGO admitted the following in support of the criminal negligence charge in the Factual Basis for its guilty plea:

> In 1998, CITGO PETROLEUM CORPORATION employees and an engineering firm recommended that CITGO PETROLEUM CORPORATION construct an additional storm water tank in order to prevent an overflow of the two existing tanks during a heavy rain event.

---

1. Plaintiffs filed a Statement of Undisputed Material Facts with their Motion for Summary Judgment. [Doc. # 25-1] CITGO did not submit a statement of material facts as to which there exists a genuine issue to be tried. Therefore, the undisputed facts presented by Plaintiffs are deemed admitted for the purpose of this motion. LR56.2.

CITGO PETROLEUM CORPORATION negligently failed to construct the recommended additional tank until 2006. In addition, from 2003 to 2006, CITGO PETROLEUM CORPORATION negligently allowed oil and solids to be collected in the storm water tanks, which reduced the capacity of the tanks.

On June 19, 2006, a large rain event caused the reduced capacity storm water tanks to over flow. Consequently the oil which had been allowed to collect in the two existing storm water tanks was discharged into the Indian Marais and the Calcasieu River.

[See Motion for Partial Summary Judgment, Statement of Undisputed Material Facts Doc. # 25–1.] Also, in its opposition to the summary judgment motion, CITGO admits that it violated rule Sections 311(b)(3) and 301(a) of the Clean Water Act. [See Doc. # 34–1, pps. 11, 12]

### B. Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is particularly appropriate in a Clean Water Act case because the Act imposes strict liability, and Congress provided for streamlined and straightforward enforcement. See eg., U.S. v. Coastal States Crude Gathering Co., 643 F.2d 1125, 1127 (5th Cir.1981); United States v. Gulf Park Water Co., Inc., 972 F.Supp. 1056, 1060 (S.D.Miss. 1997). Additionally, the courts within this circuit have frequently used summary judgment to address affirmative defenses including-and in addition to-those enumerated in Rule 12(b). See Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir.2010) (citations omitted).

### C. Three Points for Summary Judgment

Plaintiffs seek summary judgment on the following points:

1. CITGO violated Section 311(b)(3) of the Clean Water Act and is subject to a civil penalty;

2. CITGO violated Section 301(a) of the Clean Water Act; and

3. CITGO's four (4) affirmative defenses are inapplicable to the plaintiffs' claims.

### 1. CITGO VIOLATED SECTION 311(b)(3)

The plaintiffs allege, and CITGO admits in its opposition memorandum, that there was a discharge of oil into or upon navigable waters and in a quantity "as may be harmful." 33 U.S.C. § 1321(b)(3). As such, is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law that CITGO violated Section 311(b)(3) of the Clean Water Act. The amount of any civil penalty imposed will be determined after a trial on the merits.

### 2. CITGO VIOLATED SECTION 301(a)

The plaintiffs allege, and CITGO admits in its opposition memorandum, that CITGO discharged oil into the Indian Marais and Calcasieu River and that such discharge was not authorized by its federal permit issued under the Clean Water Act. Thus, there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law that CITGO violated Section 301(a) of the Act. The Court notes that Section 301(a) is a predicate for the injunctive relief sought by Plaintiffs. However, the need for and nature of injunctive relief is reserved for determination after trial on the merits.

### 3. CITGO'S AFFIRMATIVE DEFENSES ARE INAPPLICABLE

CITGO raised four affirmative defenses in its answer: (1) Plaintiffs fail to state a claim for which relief can be granted, (2) Plaintiffs' claims are barred and/or must be offset by payments of criminal fines/penalties by CITGO for the same incident, (3) Plaintiffs' claim for injunctive relief is barred because it is overbroad and lacks specificity, and (4) Plaintiffs' claims are barred due to an "Act of God."

#### a. First and Fourth Affirmative Defenses

CITGO does not dispute Plaintiffs' motion as to the first defense, and it is evident from the uncontested facts [Doc. # 25–1] and the admissions by CITGO [Doc. # 34–1] that Plaintiffs have, in fact, stated a claim. Therefore, the first affirmative defense is without merit, and Plaintiffs are entitled to judgment as a matter of law on that defense. Likewise, CITGO does not present any law or argument in opposition to Plaintiffs' request for summary judgment on the fourth affirmative defense. Based on the plain language of the Clean Water Act and Fifth Circuit precedent, CITGO cannot maintain an "Act of God" defense to the assessment of a civil penalty in this case. *See U.S. v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir.1981). Thus, Plaintiffs are entitled to judgment as a matter of law on Defendant's fourth affirmative defense, as well.

#### b. Second Affirmative Defense

██ The second affirmative defense presented is that Plaintiffs' claims are barred, in whole or in part, to the extent of any payments of fines and/or penalties by CITGO related to the same incident alleged as the basis for Plaintiffs' claims, and the penalties sought by Plaintiffs must be offset to the extent of any such payment of other fines and/or penalties. First, Plaintiffs' claim for a civil penalty is *clearly* not barred by CITGOs payment of its criminal fine, as the Clean Water Act specifically provides for both civil *and* criminal fines/penalties. See Section 311(b); 33 U.S.C. § 1321(b). Additionally, the plea agreement signed by CITGO reads, "Furthermore, this Plea Agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply." [Doc. # 25, Exhibit 14, p. 4]

Second, CITGO has provided no legal authority whatsoever to support its defense that it is entitled to an offset for the amount of its criminal fine. CITGO correctly lists the factors to be considered by the court in determining the amount of civil penalty, one of which is "any other penalty for the same incident." See Section 311(b)(8), 33 U.S.C. § 1321(b)(8) ("In *determining* the amount of a civil penalty .... the court ... shall consider ...." (emphasis added)). However, that simply means that other penalties for the same incident are taken into consideration on the front end-in determining the amount of the fine-and not on the back end-as an offset to the civil penalty imposed. CITGO has offered no support for its rationalization that it somehow gets to *offset* a civil fine by the amount paid for the criminal fine. The Court shall consider all factors in Section 311(b)(8) in setting the amount of any civil fine, including other penalties imposed on CITGO. Plaintiffs are entitled to judgment as a matter of law on this second affirmative defense.

#### c. Third Affirmative Defense

██ Finally, CITGO claims that Plaintiffs' request for injunctive relief is barred because it is overbroad and fails to adequately specify the grounds and scope of

the requested injunctive relief. The Plaintiffs' request for injunctive relief is absolutely not barred. Again, the Clean Water Act specifically provides for the type of relief sought. See 33 U.S.C. § 1319(b)(authorizing the United States to seek appropriate relief, including a permanent or temporary injunction). Also, CITGO presents no legal authority that the *request* for injunctive relief must be narrowly tailored or specific. The actual injunction, if ordered, must not be vague and overbroad. However, the mere request for injunctive relief must only meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. Here, the pleading and request by the Plaintiffs satisfies Rule 8. Should the court determine after trial that injunctive relief is necessary, such relief will be made specific and in accordance with the law. *See Weinberger v. Romero–Barcelo,* 456 U.S. 305, 320, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (The Clean Water Act "permits the district court to order that relief it considers necessary to secure prompt compliance with the Act."). The third affirmative defense presented is merit less, and Plaintiffs are entitled to judgment as a matter of law.

**D. Conclusion**

Based on the undisputed facts and law, it is evident that CITGO violated Sections 311(b) and 301(a) of the Clean Water Act. For the reasons discussed above, the four affirmative defenses raised by CITGO are inapplicable. That is, the plaintiffs have properly stated claims against CITGO in the Complaint; CITGO's payment of a criminal penalty does not bar Plaintiffs' case or require an offset on a civil penalty; the United States has pleaded a valid claim for injunctive relief; and, an "act of God" affirmative defense is inapplicable to violations of Sections 311(b) and 301(a) of the Clean Water Act.

Therefore, the issues to be determined at trial include: (1) the total amount of oil discharged, (2) whether CITGO was grossly negligent, (3) the appropriate amount for a penalty, and (4) whether injunctive relief is appropriate and the nature of any such relief.

For the reasons set forth above, the Plaintiffs' Motion for Partial Summary Judgment is **GRANTED.**