**APALACHICOLA RIVERKEEPER, et al., Plaintiffs**

v.

**TAYLOR ENERGY COMPANY, LLC, Defendant.**

**Civil Action No. 12–337.**

United States District Court, E.D. Louisiana.

July 21, 2013.

Machelle Rae Lee Hall, Adam Babich, Morgan N. Embleton, Tulane Environmental Law Clinic, New Orleans, LA, for Plaintiffs.

Paul J. Goodwine, Taylor P. Mouledoux, Slattery, Marino & Roberts, New Orleans, LA, Bret A. Sumner, Michael L. Beatty, Beatty & Wozniak, P.C., Denver, CO, for Defendant.

## ORDER AND REASONS

SUSIE MORGAN, District Judge.

Before the Court is defendant Taylor Energy Company LLC's ("Taylor") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Taylor's alternative motion to stay. Having already addressed Taylor's motion to dismiss this case for lack of standing pursuant to Rule 12(b)(1),[1] the Court now addresses Taylor's motion to dismiss this case for failure to state a claim pursuant to Rule 12(b)(6) and Taylor's alternative request for a stay. For the reasons set forth below, Taylor's Rule 12(b)(6) motion is granted in part and denied in part. Taylor's request for a stay is denied.

## BACKGROUND

The facts and relevant procedural history of this case were discussed in the Court's Order of May 4, 2013, which granted in part and denied in part Taylor's motion to dismiss this case for lack of standing. *See Apalachicola Riverkeeper v. Taylor Energy Co. LLC,* No. 12–337, 2013 WL 1897142, at *1 (E.D.La. May 4, 2013). Because three of the Original Plaintiffs— the Louisiana Environmental Action Network ("LEAN"), the Waterkeeper Alliance, and the Apalachicola Riverkeeper (collectively, the "Remaining Plaintiffs")— were found to have established the requirements for associational standing to bring this citizen suit against Taylor, and thus Taylor's motion to dismiss those plaintiffs was denied, the Court instructed the Remaining Plaintiffs to respond to Taylor's motion to dismiss for failure to state a claim and Taylor's alternative prayer for a stay. On May 17, 2013, the Re-

1. A group of seven organizations (the "Original Plaintiffs") filed this Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA") citizen suit against Taylor on February 2, 2012, complaining about oil spilling from a damaged Taylor wellbore in the Gulf of Mexico. The Original Plaintiffs filed an amended complaint on March 13, 2012. Taylor filed a motion to dismiss this case for lack of standing and for failure to state a claim on April 25, 2012. This first motion to dismiss also sought, in the alternative, to stay this case in favor of letting the Coast Guard respond to the spill. On June 8, 2012, the Court ordered the Original Plaintiffs to amend their complaint to remedy the issues raised by Taylor's first motion to dismiss, and Taylor's pending motion to dismiss was denied without prejudice. The Original Plaintiffs filed a second amended complaint that same day. On June 26, 2012, Taylor filed a second motion to dismiss for lack of standing and failure to state a claim. Taylor also requested, in the alternative, a stay. On July 3, 2012, the Court ordered that Taylor's motion to dismiss for lack of standing be severed from Taylor's motion to dismiss for failure to state a claim.

maining Plaintiffs filed their response.[2] On May 31, 2013, Taylor filed a reply in further support of its Rule 12(b)(6) motion and its request for a stay.[3] On June 10, 2013, the Remaining Plaintiffs filed a sur-reply in further opposition.[4] On June 14, 2013, the Court heard oral argument from counsel for Taylor and counsel for the Remaining Plaintiffs.[5]

## I. THE PARTIES' ARGUMENTS
### A. Taylor's Motion to Dismiss/Stay

Taylor asserts two arguments for the dismissal of the Remaining Plaintiffs' CWA claims under Rule 12(b)(6). First, Taylor argues 33 U.S.C. § 1321 is the "exclusive" mechanism for litigating CWA cases involving un-permitted discharges of oil and citizen suits are not permitted to enforce 33 U.S.C. § 1321. As a result, the Remaining Plaintiffs' citizen suit to enforce 33 U.S.C. § 1311 with respect to a discharge of oil fails to state a facially plausible cause of action. Second, Taylor argues that the Remaining Plaintiffs' citizen suit to enforce 33 U.S.C. § 1342, governing violations of national pollutant discharge elimination system ("NPDES") permits, fails to state a facially plausible cause of action because Taylor admits it does not have a NPDES permit to discharge oil into the Gulf of Mexico.

With respect to the RCRA claim, Taylor contends that the Remaining Plaintiffs have not stated a cause of action under RCRA because they have not alleged that the discharges from the damaged Taylor wellbore present an "imminent and substantial danger."[6]

Finally, with respect to its alternative prayer for a stay, Taylor argues that even if the Remaining Plaintiffs have viable CWA and RCRA claims the extraordinary technological complexity of the response in this case, involving various governmental entities all operating in conjunction with Taylor under a United States Coast Guard-directed "Unified Command," is such that the Court should stay this litigation pursuant to the "primary jurisdiction doctrine" in favor of allowing the Unified Command to respond to the spill.

### B. The Remaining Plaintiffs' Opposition

The Remaining Plaintiffs' opposition to Taylor's motion to dismiss and alternative motion to stay is based on four distinct arguments: (1) the Remaining Plaintiffs' CWA claim is brought under 33 U.S.C. § 1365 to enforce 33 U.S.C. § 1311, which contains a citizen suit provision and does apply to discharges of oil as a pollutant, and not to enforce 33 U.S.C. § 1321, which the Remaining Plaintiffs agree does not contain a citizen suit provision; (2) the Remaining Plaintiffs' § 1342 claim is an alternative to their § 1311 claim and, if Taylor is willing to concede that the dis-

---

2. R. Doc. 68.

3. R. Doc. 74.

4. R. Doc. 78.

5. R. Doc. 80.

6. Taylor also raises, for the first time in its reply memorandum, several other arguments in support of its motion to dismiss the Remaining Plaintiffs' RCRA claim, including the argument that RCRA does not apply to "hydrocarbon seeps resulting from an Act of God," the argument that the leaking oil does not constitute the disposal of solid or hazardous waste, and thus RCRA does not apply, and the argument that the Remaining Plaintiffs' RCRA claim is deficient in that it fails to allege negligence on the part of Taylor. Because "arguments cannot be raised for the first time in a reply brief," *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008), the Court does not consider these arguments.

charge at issue is not pursuant to an NPDES permit, the Remaining Plaintiffs have no § 1342 claim; (3) taking as true the allegations in the second amended complaint, the Remaining Plaintiffs have stated a facially plausible claim for injunctive relief under RCRA; and (4) the primary jurisdiction doctrine does not apply to CWA/RCRA citizen suits absent exceptional circumstances, which are not present here, so a stay is inappropriate.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth a factual allegation in support of its claim that would entitle it to relief (i.e., for "failure to state a claim"). *See, e.g. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007). Those factual allegations "must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir.2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the non-moving party, *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009), but the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

## III. ANALYSIS

### A. The Remaining Plaintiffs State a Facially Plausible Citizen Suit, via 33 U.S.C. § 1365, to Enforce 33 U.S.C. § 1311

#### 1. The Relevant Statutory Framework

The CWA was intended "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). "As a general matter, [the CWA's] provisions prohibit the unauthorized discharge of pollutants, including oil and other hazardous substances, into the waters of the United States, and set standards for evaluating discharges from various sources." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,* 704 F.3d 413, 422 (5th Cir.2013). The CWA authorizes citizen suits to obtain injunctions and civil penalties, "payable to the United States Treasury, against any person found to be in violation of 'an effluent standard or limitation' under the Act." *Id.* (quoting *Envtl. Conservation Org. v. City of Dallas,* 529 F.3d 519, 526 (5th Cir.2008)); *see also* 33 U.S.C. § 1365(a)(1) ("any citizen may commence a civil action on his own behalf ... against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation"). The district court has jurisdiction to enforce effluent standards or limitations regardless of the amount in controversy. 33 U.S.C. § 1365(a).

"The term 'effluent limitation' means any restriction established by a State or the [Environmental Protection Agency] Administrator on quantities, rates, and concentrations of chemical, physical, bio-

logical, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance." 33 U.S.C.A. § 1362(11). For purposes of this case, the relevant "effluent standards or limitations" for which § 1365 allows citizens suits are (1) an unlawful act under § 1311(a); and (2) an "an effluent limitation or other limitation" under § 1311 or § 1312. *See* 33 U.S.C. § 1365(f). 33 U.S.C. § 1311(a) provides that "the discharge of any pollutant by any person shall· be unlawful." 33 U.S.C. § 1362 defines the "discharge of a pollutant," made unlawful by § 1311, as "(A) any addition of any pollutant to navigable waters from any point source, [and] (B) any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." [7] 33 U.S.C. § 1362(12).

**7.** In its motion to dismiss and at oral argument, Taylor argues that § 1311 applies only to "onshore" discharges, and not an "offshore" discharge like the one in this case. 33 U.S.C. § 1311's application is not limited to onshore discharges. *See* 33 U.S.C. § 1362 ("The term 'discharge of a pollutant' . . . means (A) any addition of any pollutant to navigable waters from any point source, (B) any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft."). The body of water at issue in this case is the Gulf of Mexico, which clearly qualifies as navigable waters and/or waters of the contiguous zone.

**8.** *See* R. Doc. 29 at ¶ 60.

**9.** A pollutant is defined as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

## 2. The Remaining Plaintiffs' § 1365 Citizen Suit States a Facially Plausible Cause of Action to Enforce § 1311

 The Remaining Plaintiffs' § 1365 CWA citizen suit seeks to enforce § 1311.[8] Absent very specific, narrow exceptions, 33 U.S.C. § 1311 makes any un-permitted discharge of a pollutant illegal, and § 1365 allows private citizens such as the Remaining Plaintiffs to seek to enforce § 1311 by way of a CWA citizen suit. To succeed on a § 1365 citizen suit to enforce § 1311, a plaintiff must establish three elements: (1) that the defendant unlawfully discharged or is discharging a "pollutant";[9] (2) that the discharge emanated or is emanating from a "point source";[10] and (3) that the pollutant was discharged or is being discharged into "navigable waters."[11] Taylor does not argue in its motion to dismiss that the "navigable waters" and "point source" requirements are not met.[12] As a

**10.** A point source is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

**11.** Navigable waters are defined as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

**12.** As it did with several of its arguments for dismissal of the Remaining Plaintiffs' RCRA claim, Taylor raised for the first time in its reply brief the argument that the oil allegedly spilling from the damaged Taylor wellhead is not actually coming from a point source. Not only is Taylor's raising of this argument for the first time in the reply brief inappropriate, the Court also notes that the Remaining Plaintiffs specifically alleged that the oil at issue is emanating from a point source, *see* R. Doc. 29 at ¶¶ 58 & 60, and the Court takes this allegation as true for purposes of this motion to dismiss.

result, the Court assumes for purposes of this motion that those requirements are met.

 Taylor does argues that oil is not a "pollutant" for § 1311 purposes.[13] 33 U.S.C. § 1362 does not explicitly include oil in its definition of pollutant, but courts have consistently held that oil is a pollutant for purposes of § 1311. *See Ctr. for Biological Diversity,* 704 F.3d at 422 (citing § 1311 as one of the CWA provisions prohibiting the "unauthorized discharge of pollutants, *including oil* and other hazardous substances, into the waters of the United States") (emphasis added); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 568 (5th Cir.1996) ("Oil and grease are listed as conventional pollutants" in C.F.R. § 401.16, which defines the "effluent limitation guidelines" applicable to the CWA); *United States v. Citgo Petroleum Corp.,* 697 F.Supp.2d 670, 672 (W.D.La.2010) (discharge of oil into navigable waters violated both § 1311 and § 1321). The Court finds that oil is a pollutant for purposes of § 1311. The Remaining Plaintiffs' allegation that oil is leaking from Taylor's damaged wellbore satisfies the "pollutant" requirement in § 1311. All three elements of the Remaining Plaintiffs' cause of action

under 33 U.S.C. § 1365 to enforce 33 U.S.C. § 1311 are met.

 Taylor argues the Remaining Plaintiffs are nevertheless precluded from asserting a claim under § 1311 relating to the discharge of oil into offshore waters because the only statute under which an action relating to the discharge of oil into offshore waters may be brought is § 1321 and citizen suits are not permitted to enforce § 1321 because the President has the exclusive power to deal with such situations.[14] Taylor cites § 1321(c) as the provision vesting exclusive jurisdiction over offshore oil discharges in the Executive Branch, and, Taylor argues, effectively prohibiting citizen suits to enforce § 1311.[15] 33 U.S.C. § 1321(c) provides, in relevant part, as follows:

(1) General removal requirement

(A) The President shall ... ensure effective and immediate removal of a discharge, and mitigation or prevention of a substantial threat of a discharge, of oil or a hazardous substance—

(i) into or on the navigable waters;

(ii) on the adjoining shorelines to the navigable waters;

(iii) into or on the waters of the exclusive economic zone; or

---

**13.** The only time Taylor argues that oil is not a pollutant for purposes of § 1311 is in a footnote in Taylor's motion to dismiss. *See* R. Doc. 37–1 at p. 27 n. 10. Taylor does not address this argument in its reply brief, instead focusing its attention on the argument that, because § 1321 is the exclusive remedy for oil spills, § 1311 does not apply to oil spills in any event.

**14.** Taylor and the Remaining Plaintiffs agree a citizen suit may not be brought under § 1365 to enforce § 1321. *See Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC,* 794 F.Supp.2d 602, 618–19 (D.Md.2011) (citing 33 U.S.C. § 1321(b)) ("if Congress intended to allow citizen suits for

the enforcement of § 1321, Congress would have included § 1321 in the [§ 1365] citizen suit provision's definition of 'effluent standard or limitation' just as it included other sections of the CWA;" such as § 1311).

**15.** Taylor argues a number of times in its original memorandum in support of its motion to dismiss that § 1321(b) also provides the Executive Branch has exclusive authority over offshore oil discharges. Subsection (b) of § 1321 does not contain any language supporting this argument, and Taylor, in its reply, cites only subsection (c) as supporting its argument that the Executive Branch has exclusive authority over offshore oil discharges.

(iv) that may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States.

(B) In carrying out this paragraph, the President may—

(i) remove or arrange for the removal of a discharge, and mitigate or prevent a substantial threat of a discharge, at any time;

(ii) direct or monitor all Federal, State, and private actions to remove a discharge; and

(iii) remove and, if necessary, destroy a vessel discharging, or threatening to discharge, by whatever means are available.

(2) Discharge posing substantial threat to public health or welfare

(A) If a discharge, or a substantial threat of a discharge, of oil or a hazardous substance from a vessel, offshore facility, or onshore facility is of such a size or character as to be a substantial threat to the public health or welfare of the United States ... the President shall direct all Federal, State, and private actions to remove the discharge or to mitigate or prevent the threat of the discharge....

33 U.S.C. § 1321(c). Despite Taylor's argument to the contrary, the Court finds that § 1321(c) does not vest exclusive jurisdiction over all actions relating to oil spills in the President. Instead, the plain language of § 1321(c) vests in the President authority only over the removal, mitigation, or prevention of a substantial threat of a discharge of oil. Nothing in § 1321(c) limits the availability of monetary damages, injunctive relief, or declaratory relief relating to oil discharges under other sections of the CWA.[16]

16. The Oil Pollution Act of 1990 ("OPA") was enacted in response to the massive *Exxon Valdez* oil spill in 1989, and it made significant changes to several CWA provisions and added several entirely new sections. *See generally* S. REP. NO. 101–94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, 1989 WL 225005. One of the CWA sections amended by the OPA was § 1321(c). Before the OPA's amendments, § 1321 authorized the President "to act to remove or arrange for the removal" of discharged oil, "unless he determines such removal will be done properly by the owner or operator of the vessel, onshore facility, or offshore facility from which the discharge occurs." 33 U.S.C. § 1321(c)(1) (1988). "In the case of a large discharge of oil that 'created a substantial threat of a pollution hazard to the public health or welfare of the United States' ... the [pre-OPA] version of the CWA permitted, but did not require, the federal government to 'coordinate and direct' all public and private response efforts.' " *In re Oil Spill by the Oil Rig "DEEP WATER HORIZON" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179, 2012 WL 5960192, at *6 (E.D.La.2012) ("*DEEPWATER HORIZON*") (quoting 33 U.S.C. § 1321(d) (1988)). "OPA amended the CWA to, among other things, expand federal authority over, and responsibility for, oil spill responses. For all spills, regardless of size or character, the CWA now requires that '[t]he President shall, in accordance with the National Contingency Plan and any appropriate Area Contingency Plan, ensure effective and immediate removal of a discharge ... of oil....' " *DEEPWATER HORIZON*, 2012 WL 5960192, at *6 (emphasis and alterations in original) (quoting 33 U.S.C. § 1321(c)(1)(A)). The post-OPA version of § 1321(c) continues to state that "[i]n the case of smaller spills, the President may choose from a variety of options when determining how to ensure effective and immediate removal." *Id.* (citing 33 U.S.C. § 1321(c)(1)(B)). "However, when there is a Substantial Spill, the [post-OPA version of the] CWA deletes the option of monitoring removal efforts. Instead, '[t]he President shall direct all Federal, State, and private actions to remove' a Substantial Spill." *Id.* (emphasis and alterations in original) (quoting 33 U.S.C. § 1321(c)(2)(A)). "Legislative history states that this provision was 'designed to eliminate the confusion evident in recent spills where the lack of clear delineation of command and management responsibility impeded prompt and effective re-

Furthermore, other courts have rejected arguments similar to the one advanced by Taylor in this case holding that § 1321 is not the "exclusive remedy for oil spills." *United States v. Colonial Pipeline Co., Inc.,* 242 F.Supp.2d 1365, 1371 (N.D.Ga. 2002) (citing *United States v. Hamel,* 551 F.2d 107 (6th Cir.1977)) (holding that the government could pursue a claim against an entity responsible for an oil discharge under § 1319).

The Oil Pollution Act's ("OPA") amendment to § 1321 was not intended by Congress to make § 1321 the sole statutory provision applicable to oil spills. Instead, Congress intended the amendment to § 1321 to clarify that command and management responsibility for removal of a discharge of oil, and mitigation or prevention of a substantial threat of a discharge of oil, belonged with the Executive Branch to ensure a prompt and efficient federal response to oil spills. *See DEEPWATER HORIZON,* 2012 WL 5960192, at *6. Remedies available under other sections of the CWA for injunctive relief or damages relating to the illegal discharge of oil, which were available prior to the enactment of the OPA, continue to exist after the OPA's amendment of § 1321.

Taylor's motion to dismiss the Remaining Plaintiffs' § 1365 CWA citizen suit to enforce § 1311 based on language in § 1321(c) is denied.

**B. Because Taylor Admits the Oil Discharge is Not Pursuant to a NPDES Permit, the Remaining Plaintiffs' 33 U.S.C. § 1342 Claim is Dismissed**

■ Like all CWA provisions, 33 U.S.C. § 1342, governing NPDES permits and

NPDES permit holders, is "designed to prevent harmful discharges into the Nation's waters." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 650, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007). "Generally speaking, the NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians,* 541 U.S. 95, 102, 124 S.Ct. 1537, 158 L.Ed.2d 264 (2004). Violations of § 1342 are included among the effluent standards for which citizen suits under § 1365 are permitted. *See* 33 U.S.C. § 1365(f); *see also Chesapeake Bay,* 794 F.Supp.2d at 618–19.

In the second amended complaint, the Remaining Plaintiffs allege that Taylor is in violation of any applicable NPDES permit Taylor may have.[17] The Remaining Plaintiffs do not allege that Taylor has a valid permit, but nevertheless assert a cause of action for a violation of a permit "if there is [a permit]." Taylor admitted in its reply brief[18] and at oral argument that it does not hold a valid NPDES permit for the oil discharge at issue and that is not operating pursuant to a NPDES permit.

Because Taylor admits it is not operating pursuant to a NPDES permit, the Remaining Plaintiffs do not have a facially plausible cause of action for an alleged violation of a non-existent NPDES permit.[19] Accordingly, Taylor's motion to dismiss the Remaining Plaintiffs' § 1365 CWA citizen suit to enforce § 1342 is granted, and that claim is dismissed.

sponse.' " *Id.* (quoting H.R. CONF. REP. No. 101–653, at 45 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 825 (1990), 1990 WL 132747).

17. *See* R. Doc. 29 at ¶¶ 62–63.

18. *See* R. Doc. 74 at pp. 10–11.

19. Because Taylor admits it does not have a NPDES permit, the Court also need not consider Taylor's argument that the NPDES permit program does not apply to oil spills such as the one at issue.

## C. The Remaining Plaintiffs' RCRA Claim is Sufficient

As with the CWA, RCRA provides for citizen suits to enforce certain RCRA provisions. Section 6972(a)(1)(B) of RCRA provides in relevant part:

> [A]ny person may commence a civil action on his own behalf ... against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). A RCRA citizen suit brought under this subsection is called a "contributing to" claim. *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 292–93 (5th Cir.2001). The Fifth Circuit has explained the three elements of a "contributing to" claim as follows:

> To prevail on a "contributing to" claim, a plaintiff is required under § 6972(a)(1)(B) to demonstrate: (1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

*Id.* at 292–93 (internal citations and footnote omitted).

In their second amended complaint, the Remaining Plaintiffs claim, *inter alia*, that Taylor is the "owner and operator" of the damaged well, the well is a "disposal facility," Taylor is a "past and present generator of hazardous and solid waste," Taylor "has contributed and is contributing to the handling and disposal into the environment of discharged oil," "Taylor's discharged oil is solid and hazardous waste," and "Taylor's continuing discharges of oil into the Gulf of Mexico may present an imminent and substantial endangerment to health or the environment." [20]

Taylor does not address the first or second elements of the Remaining Plaintiffs' RCRA claim as set forth in *Cox*. The Remaining Plaintiffs' allegations in the second amended complaint are sufficient, when taken as true, to establish these two elements. The Court assumes for purposes of this motion that those elements are met.

■ Taylor's sole argument for dismissal of the Remaining Plaintiffs' RCRA claim under Rule 12(b)(6) is similar to its argument that the Original Plaintiffs did not have standing to assert their CWA and RCRA claims in the first place; that is, the second amended complaint does not sufficiently allege an imminent threat of harm due to the spill.[21] As it did in the context of its motion to dismiss for lack of standing, Taylor argues that the spill site, which is located eleven miles offshore and to which no member of the Remaining Plaintiffs has been directly exposed, does not create an "imminent and substantial danger." *See Cox*, 256 F.3d at 292–93.

---

**20.** R. Doc. 29 at ¶¶ 64–71.

**21.** As explained earlier, the Court recognizes Taylor has raised additional arguments for dismissal of the Remaining Plaintiffs' RCRA claim, but, because those arguments were raised for the first time in Taylor's reply brief, the Court does not consider those arguments.

■ With respect to the "imminent and substantial danger" element, the Court finds that the Remaining Plaintiffs have sufficiently pled factual allegations to satisfy this requirement. A plaintiff filing a RCRA citizen suit under § 6972(a)(1)(B) need not show that a defendant's actions are actually harming the public health or the environment. *See Cox*, 256 F.3d at 299–300. Instead, the plaintiff need only show that the defendant's actions pose a serious threat of harm. *Id.; see also Holy Cross Neighborhood Ass'n v. U.S. Army Corps of Engineers*, No. 03–370, 2003 WL 22533671, at *7 (E.D.La. Nov. 3, 2003) ("It is not necessary to prove that an emergency exists to prevail under [RCRA], only that circumstances may present an imminent and substantial endangerment.") (internal citation and quotation marks omitted). The Remaining Plaintiffs' second amended complaint alleges that oil has spilled and continues to spill from Taylor's damaged wellbore, in sufficient quantities to create a visible sheen on the surface of the Gulf,[22] and that the continuous spilling of oil is causing harm not only to the environment but also to individual members of each of the remaining plaintiffs. *See Apalachicola*, 2013 WL 1897142, at *7 (finding that at least one member of each of the Remaining Plaintiffs "alleged specific, particularized injuries to their continued ability to work and recreate in the Gulf near Taylor's spill site"). These allegations, taken as true, are sufficient to satisfy the "imminent and substantial" element of the Remaining Plaintiffs' RCRA claim. Taylor's motion to dismiss the Remaining Plaintiffs' § 6972(a)(1) RCRA citizen suit claim is denied.

## D. The Primary Jurisdiction Doctrine Does Not Apply, and the Court Will Not Stay this Litigation Pursuant to that Doctrine

■ Finally, the Court addresses Taylor's argument that this Court should stay this litigation, pursuant to the primary jurisdiction doctrine, in favor of allowing the Unified Command to respond to Taylor's spill.[23] Congress expressly defined the limited circumstances under which CWA and RCRA suits may be barred. CWA citizen suits are barred only if the plaintiff fails to provide adequate notice before filing suit or if the EPA or a State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). Similarly, RCRA citizen suits are barred only if the plaintiff fails to provide adequate notice before filing suit or if the EPA or a State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order." 42 U.S.C. § 6972(b)(2)(C). The Court is unaware of any formal proceedings pending in state or federal court relating to Taylor's oil spill other than this case. Likewise, Taylor has not argued that the Remaining Plaintiffs failed to provide adequate notice before filing suit. As a result, the Court also finds that Taylor has failed to demonstrate that this case falls into any of the delineated circumstances contemplated by Congress as barring a citizen suit under RCRA or the CWA.

---

**22.** *See* R. Doc. 29 at ¶¶ 45–52.

**23.** Taylor's request for a stay is included as an alternative to its motion to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1) and/or to dismiss this case for failure to state a claim under Rule 12(b)(6). Taylor's request for a stay is not rooted in any rule of federal civil procedure.

The primary jurisdiction doctrine is not listed among the specifically delineated circumstances under which CWA and RCRA may be barred. "Where Congress creates specific exceptions to a broadly applicable provision, the 'proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.'" *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 396 (5th Cir.2008) (quoting *United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000)). If Congress had intended for the primary jurisdiction doctrine to bar citizen suits, it would have included the doctrine among the specifically delineated circumstances under which citizen suits are barred. That Congress did not do so means the doctrine is not included among the bars to a citizen suit.[24] The doctrine does not bar this citizen suit.[25]

The Fifth Circuit has stated the district courts have "general discretionary power ... to stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir.1983). The district court's discretionary authority to stay a case is "broad" but it is "not unbounded." *Id.* at 545. Indeed, the Court must always be mindful of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Court has found that the Remaining Plaintiffs have stated facially plausible causes of action under the CWA's and RCRA's citizen suit

---

**24.** Various courts interpreting the primary jurisdiction doctrine in CWA and RCRA citizen suit cases have ruled in the same way, finding the doctrine ordinarily does not apply because it contradicts the purpose of citizen suits and is not among the expressly delineated circumstances under which such suits may be barred. *See La. Envtl. Action Network v. LWC Mgmt. Co., Inc.*, No. 07–595, 2007 WL 2491360, at *7 (W.D.La. Aug. 14, 2007) ("numerous courts have held that the doctrine of primary jurisdiction is inapplicable to environmental citizen suits under statutes such as the CWA") (collecting cases); *Stewart–Sterling One LLC v. Tricon Global Rests., Inc.*, No. 00–477, 2002 WL 1837844, at *5 (E.D.La. Aug. 9, 2002) ("the majority of courts to address the [primary jurisdiction] doctrine in the context of a RCRA citizen suit have concluded either that application of the doctrine is inappropriate except in truly extraordinary circumstances or that it is wholly inapplicable in light of RCRA's express delineation of what agency action will preclude a citizen suit") (collecting cases).

**25.** For the sake of completeness, the Court briefly addresses the application of the primary jurisdiction doctrine. The doctrine applies when the following requirements are met: "(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body." *Stewart–Sterling*, 2002 WL 1837844, at *4 (quoting *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir.1995)). The primary jurisdiction doctrine is similar, but not identical, to the "diligent prosecution" bar to citizen suits under RCRA and the CWA. *See, e.g., PMC, Inc. v. Sherwin–Williams Co.*, 151 F.3d 610, 619 (7th Cir.1998). Even if the primary jurisdiction doctrine could apply in a citizen suit such as this case, the Court finds that Taylor has not established the requirements for the application of the doctrine are met in any event. While the Court has original jurisdiction over the Remaining Plaintiffs' CWA and RCRA claims, Taylor has not established this Court's adjudication of those claims "requires the resolution of predicate issues or the making of preliminary findings" or that Congress "committed the resolution of those issues or the making of those findings to an administrative body." As a result, even if the doctrine could apply in this case, Taylor has not demonstrated that the facts of this case warrant such application.

provisions, and further, that the specifically delineated bars to such suit are not present in this case. The Court has further found that the primary jurisdiction doctrine does not apply and, even if the doctrine did apply, Taylor has not shown that the facts of this case warrant a stay.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Taylor's motion to dismiss the Remaining Plaintiffs' claims pursuant to Rule 12(b)(6) be and hereby is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS FURTHER ORDERED** that Taylor's request that this litigation be stayed be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that the Court's Case Manager will conduct a telephone scheduling conference on **August 16, 2013, at 10:45 a.m.** for the purpose of picking a date for the bench trial of this matter and for the entry of a scheduling order with pretrial dates and deadlines. The Court's case manager will initiate this telephone call.